IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DIANE XIE, an individual,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF UTAH, a higher education institution and political subdivision of the State of Utah,<br><br>　　　　　　Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:04 CV 864 TC |

　　　　Plaintiff Diane Xie, Ph.D. filed suit against the University of Utah alleging three causes of action under Title VII of the United States Code.  In her Complaint, Ms. Xie alleged that the University (1) discriminated against her on the basis of race, national origin, or sex; (2) wrongfully discharged her; and (3) discharged her in retaliation for raising discrimination claims. This matter is before the court on the University's Motion to Dismiss.  In its motion, the University alleges that this court lacks subject matter jurisdiction over Ms. Xie's claims because she was not an "employee" of the University, as that term is used in the Title VII context.  The court agrees that Ms. Xie was not an employee of the University for Title VII purposes, and therefore GRANTS the University's Motion to Dismiss.

## BACKGROUND

　　　　In early fall of 2000, Ms. Xie approached Lawrence D. Reaveley, a professor at the University and chair of the University's Civil and Environmental Engineering Department ("CVEEN"), about the possibility of associating with CVEEN.  Prof. Reaveley declined to give

Ms. Xie a position in CVEEN because of concerns about her qualifications. Instead, Prof. Reaveley contacted the Energy and Geoscience Institute ("EGI") and asked if it would be interested in pursuing a working relationship with Ms. Xie.

Ms. Xie worked for EGI for only a few days before once again approaching Prof. Reaveley about the possibility of obtaining a position with CVEEN. Although there were no teaching positions open at that time, Prof. Reaveley and Ms. Xie discussed the possibility of Ms. Xie "associating" with CVEEN for the purpose of pursuing her individual research interests by attempting to obtain research grants. Following these discussions, in September of 2000, Ms. Xie received a one-year appointment as a "Research Associate Professor." While functioning in this capacity, CVEEN provided Ms. Xie with a shared office, a shared telephone, a desk, access to a copier, some business cards, and a mail box. Ms. Xie supplied her own computer and all additional supplies. This arrangement continued on a year-to-year basis until June 30, 2003, at which time CVEEN declined to renew Ms. Xie's appointment.

During her time as a research associate professor, Ms. Xie did not teach any courses or perform any tasks other than pursuing her own research goals. Ms. Xie's research was not directed or controlled by the University except to the extent Ms. Xie's grant proposals were reviewed before submission to outside entities to ensure compliance with University policies. During her nearly three years as a research associate professor, Ms. Xie did not secure any grants. The University did not pay Ms. Xie a salary or provide her with any other type of compensation or benefits, such as insurance, vacation time, or retirement benefits. The University did not pay social security or other taxes on behalf of Ms. Xie. Additionally, the University did not require Ms. Xie to work a certain number of hours and the University did not

monitor the hours that Ms. Xie did work.

## ANALYSIS

The University filed the present motion under Federal Rule of Civil Procedure 12(b)(1), claiming that this court lacks subject matter jurisdiction because Ms. Xie was never employed, for Title VII purposes, by the University. The parties have submitted competing affidavits in support of their opposing positions on the issue of whether Ms. Xie was an employee of the University. Therefore, the court will treat the present motion as one for summary judgment. See Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987) ("If the jurisdictional question [giving rise to a 12(b)(1) claim] is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56."); see also id. ("When subject matter jurisdiction is dependent upon the same statue which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined.").

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, 477 U.S. at 252. See also Anderson v. Coors

Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

The University and Ms. Xie are in general agreement about the material facts, but disagree whether those facts establish that Ms. Xie was an "employee" for Title VII purposes. (Mem. in Opp'n to Def.'s Mot. to Dismiss at 9 ("Concerning the factors and the law, the parties are in virtual agreement.  However, the parties depart in their conclusions.").)

Ms. Xie, in support her contention that she was an employee of the University, directs this court to consider "controlling state law" on this issue.  (See Mem. in Opp'n to Def.'s Mot. to Dismiss at 10.)  But whether Ms. Xie was an employee for Title VII purposes is a matter of federal law and this court will therefore confine its analysis to the factors identified by the Tenth Circuit as relevant to such an inquiry.  Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991) ("Whether a plaintiff is an 'employee' for purposes of Title VII is a question of federal law.").

Title VII defines an "employee" simply as "an individual employed by an employer."  42 U.S.C. § 2000e(f).  To determine whether an individual is an employee under Title VII, the Tenth Circuit has approved the use of a hybrid test that analyzes "the employer's right to control the 'means and manner' of the worker's performance" in addition to many other factors. Lambersten v. Utah Dep't of Corr., 79 F.3d 1024, 1028 (10th Cir. 1996); see also id. ("[W]e conclude it was proper for the district court to apply the hybrid approach for purposes of determining whether the Department was plaintiff's employer under Title VII.").

While the "main focus" of the hybrid test is the extent to which an employer controls the means and manner of a worker's performance, the Tenth Circuit has identified eleven other factors that should be considered:

> (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without

>supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

Id. The court is mindful that "[n]o single factor is conclusive. Rather, the courts are to look at the totality of the circumstances surrounding the working relationship between the parties." Id. When undertaking an analysis of this type, overlap between various factors is unavoidable. As a result, discussion of one factor may have a bearing on additional factors. For example, many of the eleven factors identified in the hybrid test are relevant to the primary inquiry concerning the level of control an employer exercises over a worker.

Turning to the critical issue of control, the court concludes that the University's relationship with Ms. Xie did not enable it to exercise the type of control typically exerted by an employer. It is undisputed that Ms. Xie enjoyed an extraordinary amount of freedom in pursuing her research goals. Ms. Xie was free to choose her own research topics and to allocate time to those projects as she saw fit. The University had no ability to mandate that Ms. Xie work a certain number of hours or submit a certain number of grant proposals. In short, Ms. Xie was free to choose research topics, decide how to produce proposals and decide when, where, or even if she should work on a proposal.

Ms. Xie counters that the University exercised control over her by claiming ownership rights to her work product, reviewing grant proposals before submission to outside entities, and by maintaining the right to discipline Ms. Xie for research misconduct. The court concludes that only minimal weight should be given to the fact that the University had the ability to assert an ownership interest in Ms. Xie's work product because any ownership interest would only arise

after Ms. Xie had completed work. Therefore, a potential ownership interest in work product is not directly relevant to the question of whether the University controlled the manner and means of that work's creation. As to Ms. Xie's other points, the court acknowledges that the University did possess some indirect control over the manner in which Ms. Xie conducted her work. This is so as Ms. Xie was obligated to avoid research misconduct and to create grant proposals that would past University muster before being submitted to outside entities. Along the same lines, though neither party has directly addressed the point, the court acknowledges that the yearly renewal of Ms. Xie's appointment itself can be viewed as another form of indirect control. This is so as the possibility of non-renewal would tend to push Ms. Xie to perform enough work to secure a renewal of her appointment.

But the indirect controls present here are more akin to reasonable precautions taken by the University to protect its reputation when entering into an association of this type than to tradition techniques used to control an employee. The controls identified by Ms. Xie focus on work quality alone and provide no evidence that the University was able to control the type of work Ms. Xie performed or whether Ms. Xie performed any work at all.

Turning to additional factors worthy of consideration, the court notes that the University never paid Ms. Xie any salary, never provided Ms. Xie with any employment-related benefits, and never paid social security or other taxes on Ms. Xie's behalf. Ms. Xie was not subject to any annual leave policy. The University provided Ms. Xie with only minimal supplies: a shared office, a shared telephone, business cards, and use of an office copy machine. All of these factors weigh against the conclusion that Ms. Xie was a University employee under Title VII.

Ms. Xie admits that she never received a salary from the University, but alleges that she was entitled to $80,000 a year so long as she worked at least nineteen hours a week. In support

of this claim, Ms. Xie attaches a document that was created during her brief employment with EGI. The court notes that the document in question predates the employment time period that serves as the basis for Ms. Xie's Title VII claims in her complaint and concludes that the document has no tendency to illuminate the nature of the relationship between Ms. Xie and CVEEN. In a somewhat contradictory manner, Ms. Xie also alleges that the University would provide her compensation in the form of grant monies received by Ms. Xie. But Ms. Xie never obtained any grant money and it is questionable whether the University could be bootstrapped into the status of Ms. Xie's employer by passing through funds obtained as a result of Ms. Xie's independent research. See Jacob-Mua v. Veneman, 289 F.3d 517, 521 (8th Cir. 2002) (rejecting claim that compensation was provided to a volunteer researcher in the form of the individual benefits the researcher received by simply conducting the research).

  Ms. Xie does provide some compelling evidence that the University itself considered Ms. Xie an "employee." The University's policies and procedures, for example, list research associate professors as personnel who are "employed" by the University. See Univ. of Utah Policy and Procedures Manual § 2-0. While the existence of University polices that seem to treat research associate professors as "employed," is some evidence that the University intended to enter into an employment relationship with Ms. Xie when granting her that title, such evidence is far from conclusive when determining whether a Title VII relationship actually existed. Policies and procedures aside, the affidavits submitted by both parties indicate that the University and Ms. Xie intended to enter into a loose association rather than a formal employer-employee relationship and that the relationship was treated by the University as such.

  In this same vein, Ms. Xie expends great effort to establish that the University failed to follow its own policies and procedures with respect to its relationship with Ms. Xie. While the

court agrees that the University's policies and procedures may shed some light on the intentions of the parties when entering into the agreement to associate, allegations that the University violated its policies and procedures are largely irrelevant to the critical analysis here.  The hybrid test looks primarily to how parties actually behaved, not at how the parties allegedly should have behaved.

Nevertheless, focusing on the facts at hand, the court notes that some of the factors identified in the hybrid test do weigh in favor of considering Ms. Xie an employee of the University.  For example, the court considers Ms. Xie a specialist, whose work would not typically be subject to stringent supervision.  Additionally, although the University's primary mission is educational instruction, the court is cognizant of the fact that research is an integral part of the University's business.  When the factors identified by the hybrid test are considered as a whole, however, the court concludes that Ms. Xie was not an employee of the University for the purposes of Title VII.  Too many critical components of a traditional employment relationship are absent here to conclude otherwise.  Cf. Cuddeback v. Florida Bd. of Educ., 381 F.3d 1230, 1234-35 (11th Cir. 2004) (concluding that a graduate research assistant was an university employee when she received a stipend and benefits for her work, received sick and annual leave, her employment was governed by a comprehensive collective bargaining agreement, the university provided equipment and training, and her termination was due to employment related reasons such as communication and attendance problems).

## CONCLUSION AND ORDER

When the totality of the factors are considered, with special emphasis on the minimal ability of the University to control the means and manner of Ms. Xie's work, the court concludes that Ms. Xie was not an employee of the University for Title VII purposes.  Because Ms. Xie's

employment status is a threshold jurisdictional issue, this court lacks subject matter jurisdiction over Ms. Xie's claims and therefore GRANTS the University's Motion to Dismiss.

SO ORDERED this 22nd day of February, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge